Judge Clifton and I would like to welcome our friend and colleague Judge David Ezra from the District of Hawaii, a former Chief Judge who has done so much for our circuit in terms of administration, and thank you, Judge Ezra, for coming and joining and helping us out. Well, thank you very much. It's always a wonderful pleasure to sit with you. Thank you. We'll now proceed with the oral argument in the first case on the calendar, which is Wood v. Scottsdale Indemnity Company. Thank you, Your Honor. Good morning. May it please the Court. My name is Leonard Feldman. I'm counsel for the plaintiffs' appellants in this case, Clarence Wood and Heidi Collingwood. With me at counsel table is David Dibble, who represented Mr. Wood in the district court, and Sarah Berry, who is a colleague of mine at Stoll Reeves. I'd like to reserve five minutes for rebuttal, but I'll keep track of my own time. There are three issues in this appeal. The first one is whether plaintiffs timely filed their notice of appeal. The second one is whether a raft made up of inner tubes is a watercraft, as that term is defined in the applicable insurance policy. And the third issue is whether the policy excludes watercraft coverage in a way that is meaningful here. The district court addressed only the second issue, and it held that an inner tube is not a watercraft under the policy. We're asking this Court to reverse that ruling as well as to reject Scottsdale's other arguments. So starting very, very briefly with the timeliness issue, Scottsdale's argument on this particular point, as we explain in our briefing, ignores the separate document rule, which establishes that the time to file a notice of appeal begins to run when the judgment is entered on a separate document in accordance with Rule 58. The argument also ignores, among other opinions, this Court's en banc decision in the Hughes Salary Retirees case where the Court held, as it has repeatedly, that the period for time to file a notice of appeal is told until a judgment is set forth in a separate document. And so here what we have is the notice of appeal was filed within 30 days of that separate judgment and is therefore timely. And that is really all that needs to be said about the timeliness issue in this case. That brings us to the second issue, which, of course, is the issue that the district court addressed in its summary judgment ruling, which is whether a raft made up of inner tubes is a watercraft, as that term is defined in the applicable insurance company. One thing I couldn't find in the record was exactly what kind of inner tube this was. The magistrate judge described it as a truck inner tube. The expert said he presumed it was a truck inner tube because of the dimensions. But there are, as you know, there are different types of inner tubes. Some are manufactured and designed just to be floated on the water and others are supposed to be inserted into tires. Which kind is this? This is a pickup truck inner tube. And there's a statement of facts that was submitted in the district court. Well, I saw that, but it's not in there. It just says it's an inner tube. Okay. I know. That's why I asked. The reason I think it's sort of important is because the definition says it's designed to be on water. Now, explain to me that if, given that these inner tubes were designed to be in the tires of a, into tires, why they're designed to be floated on the water. Well, there are two answers to that question, Your Honor. One happens to turn on the context in which this inner tube was used. It wasn't used by itself. It was used along with other inner tubes that were tied together as a raft. And so the dispositive question we submit is not whether an inner tube is a watercraft, but whether a raft made up of inner tubes is a watercraft. Your brief defines each of the component terms, craft, boat, vessel, or ship. Which one do you contend this qualifies as? I think it is closest to craft as well as to vessel. Craft is defined, according to your brief, as a boat of small size. Right. Is this a boat? It is a raft made up of inner tubes is a boat of small size. A vessel is defined. Now, boat is defined in your brief as a small vessel with or without a deck. So this is a small vessel with or without a deck? Yes, it is. It's a small boat. A vessel is defined in your brief as a hollow structure, a usually hollow structure. I guess that's an abbreviation for usually. Used on or in the water for purposes of navigation. Correct. And that's what this is. A usually hollow structure? I mean, it's hollow inside the tube, but I don't think I'd call the shape of it hollow. Well, it's hollow inside the tubes the same way that the hull of a boat is hollow inside of the boat. That's what allows it to flow. Really? Well, yes. And I would point out as well that each of those terms is preceded by the broad and encompassing term any. And so what we have here is a vessel or a craft that was designed by the users here to transport them from the insertion point upstream back to the residence. Why do you think that designed by users should be implied in there? It seems to me designed, at least in my parlance, would be designed by the manufacturer. I mean, for example, I know that in addition to these inner tubes they had some inflatable kayaks. Now that to me seems to be something that's designed by the manufacturer to be a water craft or to float on water as opposed to a truck inner tube. Right. And I guess I ought to apologize. That issue was not briefed on appeal because it wasn't really squarely raised. But it was squarely raised. That's what all arguments about is to talk about some of these issues that weren't flushed out. The case that I would cite on that, which is discussed, this is docket number 58 in the district court, page 21 of 34 using the ECF system. There's a discussion of exactly that point. And what it turns out in the briefing is a case that dealt with off-road vehicles and What's the name of the case? Do you know? The case is Farmers Insurance Exchange v. Coburg. Okay. And it's the design of the insured, not the design of the manufacturer, that controls the design issue. And so here, the design of the insured was specifically so that this raft of inner tubes could be used to transport the girls from upstream to the well. Well, let me ask you this question. I was kind of thinking about this when I was on the plane because I actually saw this happen once. Let's assume that these girls had gone down with some rope that had been supplied to them by the father. And they went down to the side of the river and they found a couple of old logs laying around there. And they kind of jerry-rigged and lashed these logs together and hopped on top and went sailing down the rapids. And a tragedy occurred. Would it have been really in the reasonable expectation of the insureds in this case that that would be a watercraft insured by their policy? A couple of logs lashed together, you know, just laying on the side of the river. And they lashed them together. It seems to me like there's very little difference here between that and taking some tire inner tubes, which are certainly not, as Judge Thomas, I think, quite correctly pointed out, are not designed to be used as inflatable devices. And there are such inner tubes that are made specifically for that purpose. Right. Well, here's how I would answer that question, Your Honor. The policyholder reads the policy, as we often expect them to do. They would see the broad and expansive definition of a watercraft. That would be the basis for the policyholder's reasonable expectation. The policyholder had no such reasonable expectation here. Pardon me? The policyholder reflected no such expectation here. Well, the policyholder was never asked that question. Never. Never once was the policyholder asked, do you believe that you owned at any time a watercraft as that phrase is defined in this policy? That question was never asked. The insurance company moved for summary judgment on that basis. The district court granted summary judgment on that basis. And a careful review of the record shows that that question was never asked. Well, I don't know that it's the defendant's fault if you didn't ask that question. What admission did defendants elicit? What was the question posed to them? The question was, do you believe that you had a watercraft at the time? And their answer was no. And their answer was no. Right. Well, what did they think it was? They apparently didn't think it was a watercraft. They didn't own it at the time that they had the policy. I mean, again, this is what's the problem with the question that Judge Ezra asked. Not the problem, but the problem, the issue that it elicits is that you can obtain watercraft subsequent to purchasing a policy. And if you read your policy and you see the broad definition of a watercraft, do you have a reasonable expectation that the inner tubes that you blew up for the specific purpose of transporting these girls downstream was only used, only used to transport people downriver? Do you have a reasonable expectation that that's a watercraft? And I submit the answer to that is yes. Well, they didn't have that in that configuration at the time. They didn't have that in that configuration at the time that they obtained the policy. I mean, it wasn't as if, you know, a family had gotten together and they had procured a whole... But that happens all the time. Excuse me. Excuse me, counsel. Let me finish. I'm sorry. That they had procured a whole bunch of inner tubes and had them in their backyard and then blown them up and secured them in a very rigorous manner and kept them back there for their summer outings, you know. And then when they obtained their policy, this thing was sitting in their backyard. That wasn't the case here. No, it wasn't. But that's no different than going out and buying a canoe, going out and buying a rowboat, going out and buying a drift boat. You look at your policy and you say, do I need to purchase additional coverage for this? And the answer is if it's over 25 horsepower or 50 horsepower or a large sailboat, yes, I need to go out and buy more coverage for it. But if it's a smaller vessel, then no, you don't. But those questions weren't posited to the insured in this case. And what I see is I'm just looking at Pamela's deposition, and she says, one, did you own any watercraft at the time the policies applied for? Objections. But she says, as I understood watercraft to be, no. But then it goes on to say, looking at this document, you see the policy period. During that period, do you recall owning any watercraft? And as you understood the watercraft to be, and her answer is no. Right. She was never asked the question, do you recall owning a watercraft during this policy period as watercraft is defined in the policy? And the reason that question is important is because it was Scottsdale that moved for summary judgment. So it's their burden to show that there are no issues of fact. But why should we presume that the opposite is true, that in fact she understood or had a different understanding of watercraft when that's not in the record? That's the only thing we have. The reason that you would make that presumption is because on summary judgment the facts are viewed in the light most favorable to the non-law court. What facts do you have? You're suggesting maybe you could have presented facts, but you didn't present any facts. So you're asking us not to read an inference. But I don't think there's anything that suggests why that inference shouldn't be read into what she said. Your Honor, at ER 108, the policyholder was asked what his reasonable expectations were with regard to this policy. And he answered that question by saying, if my family got sued for negligence, I expected to have coverage. That was his expectation. He had a policy to protect it. Did he expect that his daughter was automatically covered if she ever got sued for negligence? That question was never asked. Yeah. You have about – I think we have your argument, Hann. I know you didn't get to your last point, but we understand your argument, I think. Okay. You have about three minutes left, so do you want to reserve that? I'll reserve that, Your Honors. Thank you. May it please the Court. I'm David Ettinger for the appellee, Scottsdale, and this is my co-counsel, Linda Sue. I think that the jurisdictional issue is well covered in our brief. So if this Court does not have any questions on that issue, I will move to the merits. The district court found that there was no watercraft coverage at all in this policy. The insureds didn't ask for it, the insureds didn't pay for it, and Scottsdale didn't provide it. Well, didn't the district court find that your policy was ambiguous? As to what watercraft meant. And you agree with that? I don't think it's ambiguous in this context as to whether an inner tube is a watercraft. So I don't agree with that. Why do you say that? Why do I say that? Just because a common-sense definition. Why do you think that? Let's assume hypothetically that this is a, it's an inner tube that's designed not to be an attire, but designed to go on the water, perhaps being hauled by a boat or those, and they have all sorts of things that are called inner tubes that are designed by companies. Why isn't that covered? On this plain face. Just, well, for one thing, it doesn't fit the definition under the policy for a couple of reasons. One, it's not designed to transport persons on the water. Yes, it is. I mean, I'm just talking about hypothetical. I'm talking about something that's only designed to transport people on the water. Well, it's designed to keep people afloat on moving water. I see that as a difference. I mean. You plan to move from one place to another. Isn't that transport? No. Because you could be in a life preserver and be floating down the river. I don't think that's designed to transport someone on the water. A raft is. I mean, Abe Lincoln goes down to New Orleans on a raft. It's pushed by current. That's clearly a watercraft, isn't it? Well, as I would rely on the case that we cited for the Illinois case that said a rule of reason has to be applied in this case, there are an infinite number of things that could be floating on the water and keep people afloat, but at some point, you know, whether something is a boat, a ship, a vessel, just under a rule of reason has to. But the thing is, I don't think. Well, in California, that's an Illinois case. We are in Illinois. I understand. But I. I mean, it's. So do you have a. You couldn't find a California case that said that. Well, I can't find a California case concerning the definition of watercraft in general. It's not. But the point. I think when you're saying common sense, if you're talking about. I mean, they have all sorts of these inflatable things. Some are designed to be hauled behind water boats. They're supposed to. Some are designed to go down the river. Inflatable kayaks is what the insurance had, as well as these inner tubes. I mean, some of those are designed to transport people on water. I. I understand that. I mean, what you're saying is if it's inflatable kayak, it's not covered. If it's a real kayak, it might be. It's a kayak that has a wooden side. It might. Might be covered. But I think you also have to apply not only a rule of reason and just common sense, but the reasonable expectations of an insured. And I don't think that a reasonable person insured or these insureds specifically believe that these, that an inner tube is a watercraft under the policy. Well, it doesn't matter if, as you say, it's unambiguous in the policy, does it? The only reason the reasonable expectations of the insured come into play is if, is if the policy language is ambiguous. That's true. But you shouldn't even have, you shouldn't have. No, here's my problem. If, in fact, and excuse me for the interruption. Yeah. If, in fact, the phrase designed to float includes designed by the insured, then it seems to me you've got a coverage issue. If the phrase designed by a manufacturer is what we're talking about, then you may not. Well, but it's not designed to float. As Your Honor said, it's designed to transport. And here, even if it would be designed to float, it's not designed to transport. It's designed to keep somebody afloat. Plaintiffs themselves in their brief talk, say that inner tube riders are conveyed by the current of the water, not by the inner tube. So is the raft. But that's not, that's not designed to, that's not something that's designed to transport. No, it's not, it's not a raft. The raft that Abe Lincoln went to New Orleans on was to carry goods. But, but he wasn't on an inner tube, Your Honor. Huck Finn was trying to travel. He wasn't trying to stay afloat only. I understand. But, but he certainly didn't take an inner tube. See, I don't even think in some states this is a close question, honestly. I mean, I think in some states it would say, you know, the inner tubes that are designed like this are water, are watercraft, period. Here, you have the unusual situation. The district court found it was ambiguous, which is usually what the insured wants, and then found for you on the basis of extrinsic evidence. But if we stuck with the four corners of the policy, it may be a different result. Well, I disagree with that. He did find, he found that there was no coverage for any watercraft, and he did not rely solely on extrinsic evidence. He relied on three factors. He relied on the policy application. He relied on the declarations page of the policy, which is definitely within the four corners of the policy. And he relied on the deposition testimony of the insurers themselves. True. And I grant you all that. But I think it's sort of like, I hate to use the phrase, but your arguments are a bit like that, because what the plaintiff's argument is, look, we didn't have anticipation that if one of our inner tubes deflated, we were going to get property damage coverage for this. We had anticipation that you were going to cover us for a tort, a tort suit filed by a third party. That's what their expectation was. But they're asking for coverage, for watercraft coverage. I think that is indisputable. They're asking for watercraft coverage in this case. And if they did not buy, intend to buy or buy, and Scottsdale did not provide any watercraft coverage, then whether an inner tube is a watercraft or not is just irrelevant. And here the evidence is clear, and the district court found, and this is the basis for the district court's decision, is that there was no watercraft coverage at all for any kind of watercraft, large or small. So I really, in your view, it wouldn't make a bit of difference whether it was the lash-together group of inner tubes that we had in this case or, like I once observed in Judge Thomas' beautiful state of Montana, kids floating down the river in individual inner tubes. It doesn't make any difference. It just wasn't the intended definition under the policy. That's your view. Well, that's our second view. Our main view is that it doesn't matter whether it was a watercraft or not under the policy because there was no watercraft coverage at all. Did the district court really make that decision or base this decision on that element? Yes, it did. Could you point me to something? Sure. Excerpts of Record 16. Hold on here. Judge Thomas is the most technologically advanced judge in the Ninth Circuit, district or circuit, I might add. What I see on ER 16 is that the insureds didn't think they had something that fit within the definition of a watercraft in the policy. I didn't see something that based itself, for example, on the argument which I saw in your brief, which is the policy disclaims coverage. Well, it's not — disclaims coverage is part of it, but there's no — there was no coverage bought or provided in the first place. It's not just the — we do rely on an exclusion, but there was no coverage bought in the first place. It seemed to me I remember there was a place in the policy to list watercraft and that was blank. That's right. That's on the declarations page. Well, and also — it's also on the policy application that the insured signed, that Mr. Lindstrom signed. There was place — places on both those to list watercraft, and both of those were blank. But in answer to what the district court ruled, at the first full paragraph at page 16 of the excerpts, it says in light of the foregoing, and that's the evidence that I've been talking about that the court was relying on, the court finds that the Lindstroms did not have even a subjective, let alone an objectively reasonable belief that the policy shielded them for liability arising from the use of any watercraft, including inflatable truck inner tubes. So it didn't matter to the district court. Well, if it didn't matter, there was absolutely no reason for the district court to construe — to take extrinsic evidence. I think you're putting a lot of weight on that paragraph and concluding that the district court actually went to the exclusions, that no watercraft were covered. That could be a two-page decision. Well, but the district court did specifically rely on the declarations page that did not have any listing of watercraft coverage. And I think that's critical, because the declarations page says that insurance was covered. But you would concede — may I interrupt you for a second? You would concede, for example, if they purchased a car during the policy period and it weren't on — if the car were not listed on the declarations page, it's still going to be covered. You'd have to — you'd have to contact later, but there's a period after you procure the vehicle that the insurance applies. True. But it's — Because they conceded they didn't own any watercraft at the time they applied for the insurance. Right. Which is why they didn't pay for any watercraft coverage. Your hypothetical with buying a new car, it would be covered, but only because they had already purchased automobile liability coverage, because they paid a premium for it. That's shown on the policy application. And they list automobiles on the declarations page. So that shows that they were buying automobile coverage. Now, here — May I interrupt just one second? Of course. I know — I take your point on the declarations, except that, you know, the district court presumed that there would be an additional risk attendant to the watercraft coverage that would play into the premium cost. I didn't see any evidence in that. Did you put an underwriter on? Did you get a declaration from the underwriter? No. So we don't know. But what we do have is the policy application that Mr. Lindstrom did fill out that shows no — that shows premium costs, and for watercraft, it's blank. So it shows that they paid no premium for watercraft. And the whole point is that they had no — they didn't buy watercraft coverage. And they explained why they didn't buy watercraft coverage, because they didn't think they had any watercraft. They didn't think they had any exposure to watercraft liability at all. So it doesn't matter whether the inner tube was or was not a watercraft under the policy. We think it was not. But it doesn't matter because they did not buy and Scottsdale did not provide or collect premiums for watercraft coverage for any type of watercraft, inner tubes, boats, ships, crafts, anything. And that, I think, if you look at page 16 of the excerpts, is the reason for the district court's decision granting summary judgment. Suppose they had an old canoe, something that would be understood, recognized as a canoe, not something that was contrived, like inner tubes tied together, something that would qualify as a watercraft. And at the time they filled out the policy application, they're not thinking about the fact that there's this old boat at the house. Do we ñ and when I look at the policy, there is a requirement for underlying coverage for automobiles and for watercraft, and it defines watercraft as a more serious boat than this canoe. So they don't think about the canoe when they fill out the policy. What would happen if all of the subsequent events occurred in connection with that canoe? They would not have coverage for that because they did not purchase any watercraft coverage. Now, one thing that ñ You know, there are a bunch of ATM cases, for example, where people buy ñ don't list their ATV. I'm sorry. It would be hard to drive an ATM. An ATV coverage, where they don't list their ATVs, and yet coverage is afforded when there's an ATV accident. I mean, why doesn't it fall in that line of cases? Well, I assume that it would be covered under automobile coverage, and I also assume that in those cases there was a purchase of automobile liability coverage. Not necessarily. Well, I'm not sure. I haven't reviewed those cases, so I can't say for sure, but I would assume that it was covered under paid for automobile coverage. There's one other factor that the district court did not rely on, but that is part of the policy, and that is the watercraft exclusion. The exclusion specifically says that there is no coverage for bodily injury occurring away from the premises owned by the named insured and arising out of the use of any watercraft owned by the insured. And there's an exception to that exclusion saying that the exclusion is inapplicable if minimum primary limits for such watercraft are specified on the declarations page. And as we know, there is nothing specified for watercraft on the declarations page. So there's yet another reason. Well, that doesn't really work, because the exclusion says the exclusion doesn't apply if minimum primary limits for such watercraft are specified on C and such coverage is enforced. But if you look at item 7C, there's nothing that would have to be enforced to satisfy that requirement, is there, because you don't have a watercraft with the inboard or outboard power greater than 50 horsepower, et cetera, et cetera. There's no coverage you'd need to acquire to cover some inflatable raft or canoe. But the exclusion says that there is no coverage for any watercraft, any watercraft. Well, that can't be right, because we know there is coverage for watercraft if watercraft coverage is purchased. Exactly. It doesn't say there's no coverage if watercraft coverage is not purposed. It says there's no coverage, but the exception doesn't apply if you keep enforced the insurance that's required. Only it turns out for this kind of craft, no insurance is required. Well, I don't read that at all. Why not? I don't read it that way at all, because you have to buy some watercraft insurance. No. See, that's where conceptually I think this is backwards. This is not a watercraft coverage. This is umbrella coverage. Now, it's priced by having the component parts, but the policy is written to cover and exclude. So I read the exclusion. It pulls back unless. But why doesn't this fit within the unless? Because there's no insurance required for this kind of craft. But you have to pay something. Why? If you buy watercraft. Does the policy say no watercraft coverage unless watercraft coverage is purchased and paid for separately? I think that that is the way I read that exclusion. Well, I got to tell you, I don't understand. If the principle is you have no watercraft coverage unless you pay for it separately, there's an easy way to express that, and that language isn't within this policy. Well, I think that the declarations page itself says that, that insurance is afforded in excess of the underlying limit. So only if there's an underlying limit is there coverage for watercraft. The same applies for autos. If they hadn't purchased any automobile coverage, they wouldn't have had any excess automobile liability coverage. Well, except if there's a different theory. I mean, a theory of negligent trustment doesn't depend on the use of any particular vehicle, for example. Well, that's quite true. So it doesn't. I mean, you would cover a theory of negligent trustment or negligent supervision regardless of whether a watercraft, car or anything else was involved, right? If they had, if they, and they did, purchase automobile coverage, then they had coverage as specified in the policy, which would include negligent entrustment and other things. But here the point is, and they just didn't purchase watercraft coverage. Do we have the, I didn't see the underlying complaint in the excerpt. Does that contain, do you know? I believe that it is, but I don't recall for sure. Very good. Any further questions? Our questions have taken you over your time, but I want to make sure everybody is in. No, thank you. Thank you very much for your argument, counsel. Thank you, Your Honor. Very briefly, Your Honors. I think the most significant point that Mr. Edinger made is that it is the position of the insurance company here that the policy is unambiguous. The district court here found the policy to be ambiguous, and everything, everything the district court did followed from that conclusion. Both sides have said to this Court, have represented to this Court that this is an unambiguous policy. So the only question before the Court is whether a raft made up of inner tubes is a watercraft, as defined in the policy. The ---- Well, if it is a watercraft, but if the insurance carrier is right that watercraft are excluded, then you've got another problem. Yeah, that's right. And that's the issue that the insurance company made for the first time on appeal, and we've agreed that that's an issue that this Court can and should address. But I think the questions that were asked about that particular exclusion in the policy are dead on. This is a policy that is really no different than, for example, jewelry coverage. If you own small jewelry, it's covered. If you own the Hope Diamond, you need to have a separate policy. If you own a large watercraft, which is what the exclusion in the policy refers to, and it incorporates by reference the declarations page. And the declarations page ---- Does it matter, does that argument matter, the fact that the person who is responsible, the one who is being held liable or the insurance company is being held accountable for, is not a named insurer? It doesn't ---- I understand that argument better if you've got a named insurer. But here you have coverage that's springing out of a policy because of the named insurer's purported or ownership of a purported watercraft. Because the named insured allowed the insured to use their inner tubes. And so the coverage flows through that action. And, you know, the panel referred, for example, to the negligent entrustment cases. This is a policyholder that purchased coverage for events that occurred with its property. Right. Well, I assume it's a permitted user theory for the insured, but then that ties it back to the vehicle. I just don't have the underlying ---- I don't think I've got the underlying complaint. I'm talking about the suit in the excerpts. If there's ---- Do you have a reference for me? Yeah. It's at ER 94. Okay. Let me take a look here. Go ahead. Answer. Continue. So, you know, again, what we have here is we have very broad and expansive coverage for small watercraft. If it's a larger watercraft, then it has to be listed on the declarations page. It has to be indicated in the application. There has to be separate premiums paid for it. But when you're talking about inner tubes, rafts made up of inner tubes, canoes, anything like that, there's coverage for that. Now, ER 94 is your suit against Scottsdale. I don't ---- I'm talking about the underlying suit. Your Honor, I will find that and ---- Well, what were the ---- What was the theory of the underlying suit? I don't know, Your Honor. Isn't that important? I mean, if it's a negligent entrustment case, it's one thing. If it's a pure negligence case, it's something else. There was a cause of action against the parents, right? That's correct. And that was settled. And that ---- the cause of action against the parents was dismissed on summary judgment and the Court of Appeals ---- I'm speaking of the underlying case. Yeah. I mean, there was a payment made on behalf of not the umbrella carrier, I guess, but somebody else. The underlying ---- both of the underlying insurers paid their policy limits. Okay. But those are totally different policies, a different language. Actually, they're different policies, but they're not different language. They both adopt this dichotomy between small watercraft or coverage. Do we have any ---- do we have all that in the record? It's in the district court record. It's not in this record. It's not in the excerpts of record. Yeah. But it is in the district court record. Because I didn't see that. Okay. Well, we could provide that to the Court. Well, I'll leave that to Judge Tuber. Officially, the district court record is in front of us. We can find it if we need help. I'm not sure it's in the district court record. The policies? The underlying ---- no, the policies. The policies are. I grant you that. I'm not sure the underlying complaint is in the district court record, which I find puzzling in a coverage case. I find it absolutely puzzling that neither ---- neither party put it in, as far as I can tell. Well, again, I guess, you know, the sole issue is whether an inner tube that is used to make a raft is a watercraft. No, the sole issue is whether there's coverage under the policy for the suit that was filed. And we don't have the underlying suit in the record, as far as I can tell. And I may be dead wrong on that. And if I am, I apologize. I will look, Your Honor. Yeah.   I think we've covered it. Thank you both for your arguments. I think they've been very illuminating today and an interesting case and will be submitted for decision. Next case on the oral argument calendar is Government Employees Health Association v. Intermune. Thank you.
judges: Ezra, Thomas, Clifton